IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:22-cv-02886

BRANDON PRYOR,

    Plaintiff,

v.

SCHOOL DISTRICT NO. 1 d/b/a DENVER PUBLIC SCHOOLS;
SUPERINTENDENT ALEX MARRERO in his Individual and Official Capacities; and
DEPUTY SUPERINTENDENT ANTHONY SMITH in his Individual and Official Capacities

    Defendants.

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Brandon Pryor ("Mr. Pryor"), by and through his attorney, Samantha L. Pryor, Esq. of The Halliburton Law Firm, LLC, and pursuant to Fed.R.Civ.P. 65(a), hereby submits his **MOTION FOR PRELIMINARY INJUNCTION** as follows:

### CERTIFICATE OF COMPLIANCE

Pursuant to D.C.COLO.LCivR 7.1, the undersigned counsel certifies that she conferred with Aaron Thompson, Esq., General Counsel for School District No. 1, regarding the relief requested herein by sending a demand letter dated October 26, 2022 and a follow up email on October 28, 2022. The undersigned counsel also had a discussion with Mr. Thompson on November 4, 2022. Mr. Thompson indicated that Defendants oppose the relief requested herein.

### NATURE OF THE CASE

For the reasons set forth more thoroughly in his Complaint and Jury Demand, Mr. Pryor brings this Motion for Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65(a) to enjoin Defendants from further infringing on Mr. Pryor's constitutional rights under the First

Amendment to the United States Constitution. The factual allegations contained in Mr. Pryor's Complaint and Jury Demand are incorporated by reference as if fully set forth herein.

## INTRODUCTION AND BACKGROUND

This case is about blatant retaliation against Mr. Pryor for engaging in his First Amendment free speech rights under the United States Constitution. For the past five to six years, Mr. Pryor has used his voice to inform the community about, and to advocate against, Denver Public Schools ("DPS") and DPS' employees for their unlawful acts and omissions, especially DPS' outright discrimination towards Black students, educators, and leaders.

Instead of focusing on dismantling its admitted system of discrimination and oppression, DPS has devoted its time and resources on conducting unlawful, retaliatory investigations against Mr. Pryor and other Black students and educators throughout DPS. As articulated in his Complaint and Jury Demand, Mr. Pryor began informing the public about, and advocating against, Defendants' blatant failures in meeting the needs of Black and Latinx students and educators, particularly in Far Northeast ("FNE") Denver since approximately 2017. [*See, e.g.*, Complaint and Jury Demand, ¶¶ 16-38.]

Starting in or about August 2022, Mr. Pryor made a series of Facebook posts, criticizing DPS and DPS' public employees, including DPS Superintendent Alex Marrero ("Superintendent Marrero"), Deputy Superintendent Anthony Smith ("Deputy Smith"), the new principal at Montbello High School, and various other DPS employees. Mr. Pryor also participated in podcasts and advocated during public comment about these issues in September 2022. On or about October 12, 2022, Mr. Pryor also attended a DPS Board of Education ("BOE") work session and strongly criticized DPS employees for unapologetically causing harm and discriminating against Black and Latinx DPS students in the FNE. Mr. Pryor also appeared at the DPS' BOE public comment

session along with several other community members to advocate and raise concerns on October 17, 2022.  [See Complaint and Jury Demand, ¶¶ 39-58.]

DPS swiftly retaliated against Mr. Pryor.  On October 18, 2022, DPS hired two armed DPS Security officers to personally serve a letter on Mr. Pryor at his personal residence, unlawfully banning Mr. Pryor from coaching, participating in DPS as a volunteer, appearing at DPS for public comment or otherwise, and being on any DPS property with limited exceptions (the "Ban Letter").

The Ban Letter was issued in retaliation for Mr. Pryor exercising his free speech rights and in an attempt to silence Mr. Pryor.  Unfortunately, the Ban Letter is only one example of DPS' pattern and practice of engaging in unlawful discrimination and retaliation against Black students, educators, and community leaders.

## ARGUMENT

To obtain a preliminary injunction, a moving party must demonstrate: "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1208 (10th Cir. 2009).   Because a preliminary injunction is an extraordinary remedy, the "right to relief must be clear and unequivocal." SCFC ILC, Inc. v. VISA USA, Inc., 936 F.2d 1096, 1098 (10th Cir. 1991). In this case, Mr. Pryor satisfies all of the elements required for preliminary injunctive relief.

A. **Mr. Pryor Has a Substantial Likelihood of Success on the Merits**

The First Amendment to the United States Constitution states that "Congress shall make no law…abridging the freedom of speech.  5 U.S. Const. amend. I. "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech." Tachias v. Los Lunas Sch. Bd. of Educ., 2022 U.S. Dist. LEXIS

3

193054 at *19 (10th Cir. October 24, 2022) (*quoting* Nieves v. Barlett, 139 S.Ct. 1715, 1722 (2019); Hartman v. Moore, 547 U.S. 250, 256 (2006)). It is well settled law that "any form of official retaliation for exercising one's freedom of speech, including prosecutions, threatened prosecution, bad faith investigations, and legal harassment, constitutes an infringement of that freedom." Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000) (*quoting* Lackey v. County of Bernalillo, No. 97-2265, 1999 WL 2462 at *3 (10th Cir. Jan. 5, 1999). *See also* Koontz v. Watson, 283 F.Supp.3d 1007, 1020 (Kan. Dist. 2018) (recognizing that, "[u]nder the First Amendment, states cannot retaliate or impose conditions on…a basis that infringes…constitutionally protected freedom of speech.")

To establish a claim for First Amendment retaliation, a plaintiff must establish the following elements: (1) the plaintiff was engaged in constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. Worrell, 219 F.3d at 1212 (assessing First Amendment claims against a defendant who is neither an employer nor a party to a contract with the plaintiff) (*citing* Lackey, supra).

Importantly, raising "criticisms, concerns, and nondefamatory allegations relating to government employees…is core protected activity under the First Amendment." Tachias, 2022 U.S. Dist. LEXIS at *23. The Tenth Circuit Court of Appeals and United States Supreme Court have long held that "[a] function of free speech under our system of government is to invite dispute. ***It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger***." Id. at *21 (*quoting* Terminiello v. City of Chicago, 337 U.S. 1, 4 (1949)) (emphases added).

4

"Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute, is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." Id. (*quoting* Terminiello, *supra*).

As the United States Supreme Court has held, "[c]riticism of government is at the very center of the constitutionally protected area of free discussion. Id. at *21 (*quoting* Rosenbalt v. Baer, 383 U.S. 75, 85 (1966)). Indeed, "[o]ne of the prerogatives of American citizenship is the right to criticize public men and measures . . . ." Tachias, 2022 U.S. Dist. LEXIS at *21-22 (*quoting* Baumgartner v. United States, 322 U.S. 665, 673-74 (1944). Accordingly, the United Supreme Court has expressed "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that ***it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials***." Tachias, 2022 U.S. Dist. LEXIS at *22 (*quoting* New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964)) (emphases added). "This commitment includes 'not only informed and responsible criticism but the freedom to speak foolishly and without moderation.'" Tachias, 2022 U.S. Dist. LEXIS *22 (*quoting* Baumgartner, supra).

The United States Supreme Court has even recognized Facebook as "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard." Id. at *23 (*quoting* Packingham v. North Carolina, 137 S.Ct. 1730, 1735 (2017)). Facebook allows a person to "become a town crier with a voice that resonates farther than it could from any soapbox." Tachias, 2022 U.S. Dist. LEXIS 193054 at *23 (*quoting* Packingham, supra).

In this case, Defendants clearly retaliated against Mr. Pryor for engaging in constitutionally protected free speech. DPS and its employees are well aware of Mr. Pryor and his activism. DPS retaliated against Mr. Pryor's exercise of free speech by banning him from being present on any DPS property, and preventing him from coaching, volunteering, and from speaking at public comment.

Defendants also retaliated against Mr. Pryor because students, leaders, and community members appeared at public comment in large numbers on October 17, 2022. Defendants wasted no time in serving the Ban Letter on Mr. Pryor October 18, 2022, retaliating against Mr. Pryor for exercising his First Amendment free speech rights and organizing and encouraging others to do the same.

DPS' retaliatory actions caused Mr. Pryor to suffer injuries that would chill a person of ordinary firmness from continuing to engage in that activity. Defendants' drastic approach of banning Mr. Pryor from all things DPS has presented a severe chilling effect on speech for members of the public.

**B. Mr. Pryor and Others Will Suffer Irreparable Injury Without the Injunction**

The United States Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Herbert, 828 F.3d at 1263 (*quoting* Elrod v. Burns, 427 U.S. 347, 373 (1975). Here, before DPS issued the unlawful and retaliatory Ban Letter, Mr. Pryor was actively involved with DPS youth, particularly at the STEAM Academy and as a football coach. Mr. Pryor works in youth violence prevention and has learned about various causes of youth violence, including low neighborhood attachment. Mr. Pryor has recognized that DPS is responsible for causing low neighborhood attachment by, *inter alia*, closing neighborhood schools and causing students to feel a loss of belonging and pride in

their own communities. Mr. Pryor has used his knowledge to provide resources and positive impact to Denver youth. Mr. Pryor understands that time is of the essence in serving the youth and advocating for their academic, social, and emotional needs. Ultimately, DPS students are suffering harm from DPS' ban on Mr. Pryor.

Defendants' unlawful ban has not only prevented Mr. Pryor from being present at the school he co-founded and all other DPS property, DPS' unlawful ban has continued to thwart Mr. Pryor's ability to advocate in person during the DPS BOE public comment sessions. "[T]imeliness of political speech is particularly important…[i]t enable[s] every citizen at any time to bring the government and any person in authority to the bar of public opinion." Koontz, 283 F.Supp.3d at 1025 (*quoting* Elrod, *supra*, at 373 n.29) (further citations omitted). There is no question that Mr. Pryor will suffer irreparable injury without the injunction. *See* Herbert, 828 F.3d at 1263-64; Elrod, 427 U.S. at 373; Kikumura v. Hurley, 242 F.3d 950, 963 (10th Cir. 2001). *See also* Koontz v. St. Johns River Water Mgmt. Dist., 133 S. Ct. 2586, 2594 (2013) (holding that the "Supreme Court 'ha[s] said in a variety of contexts that the government may not deny a benefit to a person because he exercises a constitutional right.'") (*quoting* Regan Taxation with Representation of Wash., 461 U.S. 540, 545 (1983)).

C. **The Balance of Equities Weighs in Mr. Pryor's Favor**

Mr. Pryor's irreparable harm heavily outweighs any harm Defendants could possibly bear if the Court issues a preliminary injunction. When evaluating whether the Ban Letter serves a compelling governmental purpose, the Court must inquire into the circumstances of why Defendants issued the Ban Letter. *See, e.g.,* Koontz, 283 F.Supp.3d at 1022 (*citing* Doe v. City of Albuquerque, 667 F.3d 1111, 1132 (10th Cir. 2012).

Importantly, Defendants do not have an interest in enforcing the Ban Letter because it is constitutionally infirm. *See, e.g.*, Chamber of Commerce of the United States v. Edmondson, 594 F.3d 742, 771 (10th Cir. 2010). In the Ban Letter, DPS claims Mr. Pryor has demonstrated an alleged pattern of behavior that DPS deems bullying, intimidating, and harassing. Defendants claim they issued the Ban Letter to allegedly provide a safe working environment for its employees. However, as asserted in the Complaint, nothing about the evidence demonstrates any bullying, intimidating, or harassing behavior towards DPS' employees. [*See, e.g.*, Complaint, ¶¶ 60-76.]

Mr. Pryor has a constitutional right to call out public employees, even if his advocacy includes scathing or repeated criticisms that make those employees feel uncomfortable. As the United States Supreme Court has held, speech "***may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials***." New York Times Co., 370 U.S. at 270 (emphases added). Simply because Defendants do not like Mr. Pryor, his speech or his approach, does not justify Defendants' extreme actions in banning Mr. Pryor from DPS.

**D. The Preliminary Injunction Furthers the Public Interests**

Without question, issuing a preliminary injunction in this case would further the interests of the public. To be sure, Defendants' unlawful ban in retaliation for Mr. Pryor engaging in his constitutionally protected speech has presented a chilling effect against free speech. A preliminary injunction will serve the public interest because it will serve to protect a fundamental constitutional right, thus minimizing the chilling effect on speech. *See, e.g.*, Edmondson, 594 F.3d at 771.

## CONCLUSION

There can be no doubt that Defendants issued the Ban Letter in retaliation for Mr. Pryor exercising his free speech rights. As demonstrated above, Mr. Pryor has satisfied all the required elements for a preliminary injunction. Therefore, for the reasons and legal authority set forth herein, Mr. Pryor respectfully requests that this Court expeditiously grant injunctive relief and issue any other relief this Court deems just and proper.

Dated this 4th day of November 2022.

Respectfully submitted,

**ATTORNEY FOR PLAINTIFF
BRANDON PRYOR**

*/s/Samantha L. Pryor*
Samantha L. Pryor, Esq. #39194
THE HALLIBURTON LAW FIRM, LLC
8354 Northfield Blvd. Suite 3700
Denver, CO 80238
303-803-1060
spryor@thehalliburtonlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that I served a correct copy of the foregoing **MOTION FOR PRELIMINARY INJUNCTION** on the following parties as specified below:

**Via Email**
**Attorneys for Defendants**
Denver Public Schools Office of General Counsel
Aaron Thompson, Esq.
1860 Lincoln Street, Suite 1230
Denver, CO 80203
Aaron_thompson2@dpsk12.net

*s/ Kelie Kyser*
Kelie Kyser
The Halliburton Law Firm, LLC